## THE MERCHANTS BANK OF BALTIMORE, *v.* THE BANK OF THE UNITED STATES.

Decision in *Richardson* v. *Leavitt*, 1 An. Rep. 430, affirmed.

The registry in the conveyance office of a copy of an act of sale of immovables situated here, executed before a notary in another State, whose official capacity is attested by the secretary of state under the great seal of the State, the copy being certified by a notary in this State to be a true one from an original instrument deposited in his office, is sufficient, without further proof of the execution of the act, to make the registry notice to third persons. Stats. 20 March, 1827; 17 March, 1828.

A foreign creditor will not be aided by our courts in disturbing the possession of an assignee under a voluntary assignment of real property in this State, made in another State, by whose laws it was valid.

Actions by creditors to avoid contracts made by a debtor by which an illegal preference is given to certain creditors, are prescribed by one year.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. The facts of this case are stated in the opinion of the court, *infra*. The conveyance under which the appellants claim was admitted to record by the register of conveyances, on the production of a copy certified by a notary of this State to have been correctly made from an original instrument deposited in his office. This original was attested by a notary in Pennsylvania, and a certificate from the secretary of state of Pennsylvania, under the great seal of the State, attested that the person who professed to be a notary of the State of Pennsylvania, was duly commissioned as such, and that all his official acts are entitled to full faith and credit. There was a judgment below against the opponents, from which they appealed.

*Wharton* and *Bonford*, for the appellants. It is contended that no sufficient proof of a compliance with our registry laws had been presented by our opponents, to charge the Merchants Bank with constructive notice of the existence of their title. Art. 2250 of the Civil Code provides that "the record of an act purporting to be a sale or exchange of real property shall not have effect against creditors or *bonâ fide* purchasers, unless, previous to its being recorded, it was acknowledged by the party, or proved by the oath of one of the subscribing witnesses, and the certificate of such acknowledgment be signed by a judge or notary, and recorded with the instrument. This article would seem to make it incumbent on the holder of a title under private signature, in order to give effect to its registry as against creditors or purchasers, to record at the same time authentic proof of the signature of the parties. It is alleged that this is merely directory to the officer, and that if he choses to record the act without requiring the proof of its execution, the registry is good to raise constructive notice to third parties. This view is in direct opposition to the text and spirit of the article. The article is framed upon the assumption that the officer has no right or authority to require proof of the execution of the act before recording it. It supposes the recording to have taken place without such proof. By the third section of the act of 1827, it is provided that whenever acts of transfer shall have been passed under private signature, said register shall record them *in toto*, with an act ascertaining the signatures if the contracting parties wish the registering of the act to be accompanied with an act ascertaining their signatures. And the act of 1828, containing a similar clause, uses the expression "if *thereunto requested*." So that the officer is bound to register the act without the previous proof mentioned in art. 2250, if such be the will of the party, who runs the risk of having it declared ineffective against creditors and third parties. See *Segrest* v. *Hood*, 12 Rob. 210. We borrow the doctrine of notice, from the english and american law. Judge Story, in the case of *Flagg* v. *Mann*, 2

# 660 SUPREME COURT OF LOUISIANA,

MERCHANTS
BANK
*v.*
BANK OF
UNITED STATES

Sumner's Rep., inclined against the extension of the rule of constructive notice. All authorities agree that the mere registry is not sufficient to charge a party with notice, when the other requisites of the law of registry are not complied with. See Story's Equity Jurisprudence, vol. 1, § 404. Kent's Commentaries, vol. 4, p. 174. *Latouche* v. *Rusenberry*, 1 Sch. & Lef. 157. *Frost* v. *Beckman*, 1 John's Ch. Rep. 300. The language of Chancellor Kent has direct bearing upon the present case—"a deed unduly registered, either from the want of a valid acknowledgment or otherwise, is not notice, according to the prevailing opinion in this country."

Cases arising under the laws regulating the inscription of mortgages are to be distinguished from the present. Article 3331 of the Civil Code, which determines the mode of inscribing an act of mortgage under private signature, differs from art. 2250. It is expressly provided that the recording officer may inscribe the original act on his own responsibility, without proof of its execution. The inscription is not declared to be void as to creditors and purchasers for the want of this proof, as in art. 2250. The cases therefore which affirm the validity of the inscription of an act of mortgage *sous seing privé* without previous proof of its execution, have the warrant of the text of art. 3331 to sustain them. The case of *Ells* v. *Sims*, recently decided, *ante* p. 251, and which may be relied on as opposed to the position assumed here, goes no further than this.

The assignments by the Bank of the United States, of the 3d and 7th of September, 1841, so far as they effect the personal property therein transferred, have been held by the late Supreme Court to be valid. 8 Rob. 262. The question as to their effect upon the real estate situated in this State, was expressly reserved. The court below decided that as to the real estate situated here, those assignments were to be construed and governed by our law, the law *rei sitæ*. The clear dispositions of articles 10 and 483 of our Civil Code, render the examination of any authorities on this subject unnecessary. Assignments of property in trust for the benefit of certain creditors of an insolvent, are reprobated by the policy of our laws. *Townsend* v. *Louisiana Ins. Company*, 13 La. 551.

*T. A. Clarke*, for the appellants. The conveyance was recorded in the proper manner to give it effect against third persons. C. C. 2415, 2417. Stat. 20th March, 1837, ss. 3, 5. 2 Mart. N. S. 171–4. 4 Ib. N. S. 369. 6 Ib. N. S. 431. *Ells* v. *Sims*, *ante* p. 251. If the action be regarded as a revocatory one, the prescription of one year bars it. C. C. 1982. 6 Rob. 150. 4 Rob. 408.

The opinion of the court was pronounced by

EUSTIS, C. J.[*] This case arises out of the seizure of certain lots in this city, under a judgment rendered in Pennsylvania in favor of the plaintiffs against the late Bank of the United States, and made executory by the judge of the late Commercial Court of New Orleans, for the sum of $159,626 29. The third opponents, *James Robertson and others*, alleged that they were the owners and possessors of the property seized, under a conveyance made to them from the president, directors and company of the Bank of the United States, executed at Philadelphia on the 12th of February, 1842, and recorded here on the 16th April, 1842. The opposition to the seizure and sale was dismissed after a hearing before the Fourth District Court of New Orleans, and the opponents have appealed.

The conveyance purports to be a sale for a fixed price, but in point of fact the lots in question formed part of the property of the late United States Bank, assigned to certain trustees for the use of certain creditors; and the conveyance was in furtherance of the assignments, and the opponents were in possession under it. The assignments, so far as relates to the personal property assigned, having been held to be valid by a decision made by the late Supreme Court, it is said, the question as to their operation on the real estate situated within this

---

[*]SLIDELL, J., did not sit in this case, having been of counsel.

State was reserved, and that, so far as concerns the real estate, the force and effect of the assignments are to be governed exclusively by our own laws.

The plaintiffs, for all the purposes of this enquiry, must be considered as having all the rights on the property of the bank, their debtor, which the laws of Pennsylvania confer, and no more. The remedies which the laws of Louisiana give to creditors, the plaintiffs possess and have exercised. The opponents were in the possession of the property seized under a title, legal in point of form, and what are the grounds on which the plaintiffs can question its validity? They are, that assignments of property in trust for the benefit of certain creditors of an insolvent are reprobated by our laws, and that no effect will be given to them by our courts.

We have lately given our views in relation to this subject, after a very thorough argument at bar, and an examination of all the authorities which the assistance of counsel and our own research could furnish. They are stated in the opinion of the court in the case of *Richardson* v. *Leavitt*, 1 Ann. Rep. 430. We do not know that there is any part of that opinion which requires, after a revision of the subject, any change. It would result, from an application of the principles there laid down, to the present case, that, if these assignments made by the Bank of the United States in Pennsylvania, were valid by the laws of that State, and are obligatory on the plaintiffs, that is, if the bank had a right to give a preference to particular creditors, the plaintiffs could not, by any process of law, subject any property assigned for that purpose to the exclusive payment of their debt.

There are some preliminary matters, however, to be first considered.

There is nothing in the form of the conveyance which affects its validity, and all the plaintiffs can ask is, that the claims of the opponents be confined to rights created under the assignments, and conferred by the instrument itself in furtherance of their object. The mention of a sum of money as a consideration is a matter of no moment, as the case is before us under the evidence.

It is said that the conveyance was not recorded in the manner required by our laws, so as to charge the plaintiffs with notice; but we think that, under the acts of the legislature of 1827 and 1828, relating to the register of conveyances for New Orleans, the record as made of the instrument did operate as notice.

The case of *Townsend* v. *The Louisiana State Insurance Company*, 13 La. 551, is considered by the counsel for the plaintiffs as conclusive in their favor. But the facts of that case, and the decisions made on them, have no application to the questions which the case of *Richardson* v. *Leavitt*, and this case, present. In *Townsend's* case, the assignment was made by an insolvent debtor residing in Louisiana, to the detriment of his creditors, of property which was their common pledge, in which an undue preference was sought to be given, in palpable violation of his obligations and of the penal, as well as civil, laws of the land. That decision we have had occasion to recognise as correct; but we have also held that, where there was no common pledge, where by the law of the domicil of the parties where the contract was made, no right was created on the property of the debtor, and he might lawfully prefer one creditor to another in payment, a foreign creditor would not be aided by our courts in disturbing the possession of an assignee under a voluntary assignment, lawfully made for the purpose of carrying into effect a distribution of *moveable* property, which the debtor had the undoubted right to make. If the property in dispute were personal, we would maintain the possession of the opponents in the case made out by plaintiffs. Is there another rule applicable to real property?

MERCHANTS BANK *v.* BANK OF UNITED STATES

As to the validity of the assignments, and binding force of the contracts under which the opponents held the property in dispute, under the laws of Pennsylvania, and of Maryland, the domicil of plaintiffs, the courts of those States have removed all doubt by repeated recognitions of the principles on which they rest. 13 Sargeant & Rawle, 182. 6 Gill & Johnson, 371, 363, 206. *Dana* v, *The Bank of the United States*, in the Supreme Court of Pennsylvania. *United States Bank* v. *United States*, 8 Rob. 262.

But the argument is, that our own laws operate exclusively upon real property within our jurisdiction; and arts. 10 and 483 of our Code are considered to be so formal and positive on that subject, as to supersede the necessity of any further enquiry. The clause of art. 10 referred to, provides that the effect of acts passed in one country to have effect in another, is regulated by the laws of the country where they are to have effect. The second paragraph of article 483 provides that, persons residing out of the State cannot dispose of the property they possess here in a manner different from that prescribed by its laws. It would not be reasonable to isolate these provisions from the great body of our laws, and give them an arbitrary and literal interpretation. They are the exponents of principles which are recognised under every system of laws, and their application is well understood. There are cases arising here relating to property in this State, and by no means a small number have been before us, which are governed and determined by laws other than those of Louisiana. There can be no question of the supremecy of the laws of every country over the property within its jurisdiction, real and personal; but their exclusive application indiscriminately to all cases occurring, would be contrary to those rules of comity which every civilised nation acknowledges, and those who administer the laws are bound to respect.

Merlin, Répertoire, *verbo Loi*, § 6, nos. 2, 3, says, that, though the french law governs in all cases of immovables in France, even when the owners are foreigners, yet that there are exceptions to the rule. As, for instance, if the foreign law in the country where a contract is made respecting them, has been adopted by the contracting parties, and converted by them into an express contract; in such a case, he holds, that the contract is binding, because the foreign law, as such, does not act upon the immovables in France, but solely by way of contract. And he applies the same principle to cases where there is no express adoption of the foreign law, but it arises by way of tacit contract from the place of the contract.

But this is not a case in which we are called upon to give effect to a foreign law, adversely to our own. The opponents are in possession under a title perfect as to form, and competent to transfer the property from the owner to them, with a consideration adequate between the parties. The laws of Louisiana protect those rights of possession and ownership. The plaintiffs, third persons, without any form of law, seize the property, and have it exposed for sale. Now the first preliminary enquiry is as to their rights. Did they ever own the property, or have any right in it, or upon it? Has their debtor any power or dominion over it, or any right in it, which will authorise the seizure? This is answered by the assertion of the exclusive operation of the laws of Louisiana over all property within its jurisdiction, which is assuming the very point in dispute. The plaintiffs only can avoid the effect of the title of the opponents by setting up a right in themselves, for it cannot be supposed that any person at will can expel them from their possession; and when their pretensions are sub-

jected to the test of truth, it is found that they are seeking to invalidate a con-   <span style="float:right">MERCHANTS</span>
tract perfectly valid and lawful by the laws of the country where it was made,   <span style="float:right">BANK<br>v.</span>
and executed by the parties without any infringement on the laws of Louisiana.   <span style="float:right">BANK OF</span>
As we said in *Richardson's* case: By our laws the property of the debtor is the   <span style="float:right">UNITED STATES</span>
common pledge of his creditors. Every creditor has an action to annul con-
tracts made in fraud of his rights. The violation of the common pledge is the
basis of this action; and where there is no pledge violated, there is no injury to
the creditor. The bank, in this case, has an undoubted right to make the dispo-
sition of its property which the assignments were intended to carry into effect;
and the plaintiffs have no more right to interfere with it, than with any other
lawful payment made by the bank. Besides, under our laws, actions can be
brought by a creditor to avoid contracts made by a debtor with his creditor by
which a preference is secured, only within one year from the time the contract
was made.

The plaintiffs can acquire no rights by this summary and unlawful mode of
enforcing their claims, which can only be accounted for by the condition of wreck
in which the late Bank of the United States closed its existence.

It is therefore ordered that the judgment of the District Court be reversed,
and that the said opponents, *James Robertson, Richard H. Bayard, James S.
Newbold, Herman Cope,* and *Thomas S. Taylor,* be decreed to be the lawful
owners of the following described property, to wit: " The one undivided half
part of all and singular those three contiguous lots of ground, marked as nos.
10, 11 and 12, on a plan drawn by *J. Pilié,* city surveyor, on the 22d day of
December, 1835, and deposited in the office of *Adolphe Mazureau,* one of the
notaries public of New Orleans, the same being situated in New Orleans,
measuring each 24 feet 8 inches front on Tchoupitoulas street, between St.
Joseph and Julia streets, by 86 feet in depth, between parallel lines, being the
same property described in the act of sale, before *Jules Mossy,* one of the no-
taries of New Orleans, on the 6th day of July, 1840, by *James Dick* to the
Bank of the United States.

And it is further ordered, in virtue of the agreement of counsel touching the
effect of the decree to be rendered in this case now on the files of this court,
of date the 25th May, 1845, that the opponents, *James Robertson et al.* take and
receive the proceeds of the sale of said property made by the sheriff of the
Commercial Court of New Orleans, on the 30th May, 1845, and that the plain-
tiffs pay costs in both courts.